# 18-2990(L)

## 18-3710(CON), 18-3712(CON), 18-3715(CON), 18-3850(CON), 19-1272(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

UNITED STATES OF AMERICA,

*Appellee,*

—against—

JOSEPH PERCOCO, STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, ALAIN KALOYEROS, AKA DR. K,

*Defendants-Appellants,*

PETER GALBRAITH KELLY, JR., MICHAEL LAIPPLE, KEVIN SCHULER,

*Defendants.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOINT REPLY BRIEF ON REMAND OF DEFENDANTS-APPELLANTS
STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI
AND ALAIN KALOYEROS**

ALEXANDRA A.E. SHAPIRO
DANIEL J. O'NEILL
FABIEN M. THAYAMBALLI
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 257-4880

*Attorneys for Defendants-Appellants
    Steven Aiello and Joseph Gerardi*

TIMOTHY W. HOOVER
SPENCER L. DURLAND
HOOVER & DURLAND LLP
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600

HERBERT L. GREENMAN
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 300
Buffalo, New York 14202
(716) 849-1333

*Attorneys for Defendant-Appellant
    Louis Ciminelli*

*(Counsel continued on inside cover)*

MICHAEL C. MILLER
REID H. WEINGARTEN
MICHAEL G. SCAVELLI
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

BRUCE C. BISHOP
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-6747

*Attorneys for Defendant-Appellant*
  *Alain Kaloyeros*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................. 2

I.   THIS COURT MUST REVIEW THE SUFFICIENCY
OF THE EVIDENCE ......................................................................... 2

    A.   Sufficiency Review Is Mandatory ............................................. 2

        1.    Supreme Court And Second Circuit Precedent Require
Sufficiency Review ......................................................... 2

        2.    The Double Jeopardy Clause Requires Sufficiency Review .......... 4

        3.    Federal Procedure Requires Sufficiency Review ............ 8

        4.    The Government's Cases Are Unpersuasive And Inapposite ......... 9

    B.   Sufficiency Review Is Fair And Prudent Here ......................... 15

II.   ACQUITTAL IS REQUIRED BECAUSE THERE WAS NO VALID
THEORY OF PROPERTY AT TRIAL ............................................ 17

III.   THE EVIDENCE IS INSUFFICIENT EVEN IF MEASURED UNDER
A TRADITIONAL PROPERTY FRAUD THEORY ..................... 19

    A.   There Is No Fraud Without Proof That The Defendant Intended
To Deprive The Alleged Victim Of The Benefit Of The Bargain ......... 20

    B.   The Government's Arguments Regarding "Actual Loss,"
"Permanent Loss," And "Monetary Loss" Are Irrelevant ...................... 22

    C.   There Is No Merit To The Government's Claim That Merely
"Inducing" The Payment Of Money Constitutes "Harm" ...................... 24

        1.    This Court's Precedents Foreclose The Government's Theory ..... 25

i

2. The Supreme Court Has Never Endorsed The Government's Theory ...............................................................................27

3. This Court Has Not Endorsed The Government's Theory ...........32

4. Common-Law Principles Do Not Support The Government's Theory ....................................................................33

D. The Evidence At Trial Was Insufficient..................................................36

IV. GERARDI'S § 1001 CONVICTION SHOULD BE REVERSED .................41

A. The Government's Materiality Argument Fails ........................................41

B. The Government Does Not Meaningfully Dispute Prejudicial Spillover From The Wire Fraud And Conspiracy Counts ......................44

CONCLUSION ..................................................................................46

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Atl. Delaine Co. v. James*,
   94 U.S. 207 (1876) ...........................................................................35

*Brogan v. United States*,
   522 U.S. 398 (1998) .........................................................................43

*Brown v. Ohio*,
   432 U.S. 161 (1977) ...........................................................................5

*Burks v. United States*,
   437 U.S. 1 (1978) ..................................................................... passim

*Carpenter v. United States*,
   484 U.S. 19 (1987) ..................................................................... 27, 31

*Chiarella v. United States*,
   445 U.S. 222 (1980) .........................................................................27

*Ciminelli v. United States*,
   598 U.S. 306 (2023) ................................................................... passim

*Durland v. United States*,
   161 U.S. 306 (1896) ................................................................... 31, 32

*Epperson v. Arkansas*,
   393 U.S. 97 (1968) .............................................................................9

*Evans v. Michigan*,
   568 U.S. 313 (2013) ...........................................................................6

*Gold v. Gold*,
   187 F. 273 (2d Cir. 1911) ...................................................................9

*Green v. United States*,
   355 U.S. 184 (1957) ...........................................................................5

*Griffith v. Kentucky,*
    479 U.S. 314 (1987) ........................................................................12

*Hammerschmidt v. United States,*
    265 U.S. 182 (1924) ........................................................................28

*Henderson v. United States,*
    568 U.S. 266 (2013) .................................................................. 12, 16

*Hoffler v. Bezio,*
    726 F.3d 144 (2d Cir. 2013) .................................................. 4, 15, 16

*Johnson v. United States,*
    520 U.S. 461 (1997) ............................................................ 12, 15, 16

*Justices of Boston Municipal Court v. Lydon,*
    466 U.S. 294 (1984). ......................................................................6, 7

*Kelly v. United States,*
    140 S. Ct. 1565 (2020) .......................................................... 23, 28, 29

*Lockhart v. Nelson,*
    488 U.S. 33 (1988) .................................................................... 7, 8, 9

*Loughrin v. United States,*
    573 U.S. 351 (2014) ........................................................................31

*Martinez v. Illinois,*
    572 U.S. 833 (2014) .........................................................................6

*McAleer v. Horsey,*
    35 Md. 439 (1872) .........................................................................34

*McDonnell v. United States,*
    579 U.S. 550 (2016) ................................................................. passim

*McNally v. United States,*
    483 U.S. 350 (1987) .............................................................. 12, 28, 29

*N.Y. State Citizens' Coal. for Child. v. Poole,*
    922 F.3d 69 (2d Cir. 2019) ...................................................... 10, 30, 33

iv

*Palmer v. Grammer*,
    863 F.2d 588 (8th Cir. 1988) ................................................................6

*Richardson v. United States*,
    468 U.S. 317 (1984) ............................................................................7

*Russell v. Indus. Transp. Co.*,
    113 Tex. 441 (1924) ..........................................................................35

*Sanabria v. United States*,
    437 U.S. 54 (1978) ..............................................................................6

*SEC v. Govil*,
    86 F.4th 89 (2d Cir. 2023) ............................................... 30, 33, 34, 35

*Sekhar v. United States*,
    570 U.S. 729 (2013) ..........................................................................16

*Shaw v. United States*,
    580 U.S. 63 (2016) ................................................................. 29, 30, 31

*Skilling v. United States*,
    561 U.S. 358 (2010) ............................................................ 2, 3, 19, 28

*State v. Casperson*,
    71 Utah 68 (1927) ..............................................................................36

*State v. Palmer*,
    50 Kan. 318 (1893) ............................................................................36

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ......................................................................35

*United States v. Adekanbi*,
    675 F.3d 178 (2d Cir. 2012) ..............................................................44

*United States v. Adler*,
    380 F.2d 917 (2d Cir. 1967) ..............................................................43

*United States v. Allen*,
    127 F.3d 260 (2d Cir. 1997) ..............................................................16

*United States v. Avenatti,*
  81 F.4th 171 (2d Cir. 2023) ...............................................................28

*United States v. Ballistrea,*
  101 F.3d 827 (2d Cir. 1996) ...............................................................42

*United States v. Ben Zvi,*
  168 F.3d 49 (2d Cir. 1999) ......................................................... 40, 41

*United States v. Binday,*
  804 F.3d 558 (2d Cir. 2015) ........................................................ 16, 21

*United States v. Bruchhausen,*
  977 F.2d 464 (9th Cir. 1992) ..............................................................27

*United States v. Bruno,*
  383 F.3d 65 (2d Cir. 2004) .................................................................44

*United States v. Bruno,*
  661 F.3d 733 (2d Cir. 2011) ..................................................... passim

*United States v. D'Amato,*
  39 F.3d 1249 (2d Cir. 1994) ...............................................................33

*United States v. Finazzo,*
  850 F.3d 94 (2d Cir. 2017) .................................................................16

*United States v. Gaudin,*
  515 U.S. 506 (1995) ...........................................................................42

*United States v. Guadagna,*
  183 F.3d 122 (2d Cir. 1999) ..................................................... 23, 32, 33

*United States v. Guertin,*
  67 F.4th 445 (D.C. Cir. 2023) ............................................................26

*United States v. Harrington,*
  997 F.3d 812 (8th Cir. 2021) ..............................................................12

*United States v. Hassan,*
  578 F.3d 108 (2d Cir. 2008) ....................................................... 3, 4, 6

vi

*United States v. Houston*,
792 F.3d 663 (6th Cir. 2015) ........................................................... 11, 12

*United States v. Jabar*,
19 F.4th 66 (2d Cir. 2021) ..................................................... 25, 26, 43

*United States v. Kim*,
65 F.3d 123 (9th Cir. 1995) ...................................................................12

*United States v. Litvak*,
808 F.3d 160 (2d Cir. 2015) ................................................. 42, 43, 44

*United States v. Males*,
459 F.3d 154 (2d Cir. 2006) ..................................................... 32, 33

*United States v. Massey*,
687 F.2d 1348 (10th Cir. 1982) .............................................................6

*United States v. Mercedes*,
401 F. App'x 619 (2d Cir. 2010) ................................................. 43, 44

*United States v. Mittelstaedt*,
31 F.3d 1208 (2d Cir. 1994) ........................................ 21, 22, 23, 24, 26

*United States v. Mladen*,
958 F.3d 156 (2d Cir. 2020). ..................................................................9

*United States v. Muratov*,
849 F. App'x 301 (2d Cir. 2021) ..........................................................32

*United States v. Novak*,
443 F.3d 150 (2d Cir. 2006) ................................................. 21, 26, 36

*United States v. Percoco*,
13 F.4th 158 (2d Cir. 2021) .................................................................37

*United States v. Regent Office Supply Co.*,
421 F.2d 1174 (2d Cir. 1974) ..................................................... passim

*United States v. Reynoso*,
38 F.4th 1083 (D.C. Cir. 2022) .............................................. 11, 12

*United States v. Riggi*,
    541 F.3d 94 (2d Cir. 2008) ............................................................. 3, 4, 6

*United States v. Rooney*,
    37 F.3d 847 (2d Cir. 1994) ................................................................. 44, 45

*United States v. Rowe*,
    56 F.2d 747 (2d Cir. 1932) ................................................................. 30, 31

*United States v. Sadler*,
    750 F.3d 585 (6th Cir. 2014) .....................................................................27

*United States v. Salmonese*,
    352 F.3d 608 (2d Cir. 2003) .....................................................................40

*United States v. Sampson*,
    371 U.S. 75 (1962) ........................................................................... 31, 32

*United States v. Scarpa*,
    913 F.2d 993 (2d Cir. 1990) .....................................................................12

*United States v. Schooner Peggy*,
    1 Cranch (5 U.S.) 103 (1801) ..................................................................12

*United States v. Schwartz*,
    924 F.2d 410 (2d Cir. 1991) ........................................................... passim

*United States v. Sepulveda*,
    420 F. Supp. 3d 153 (S.D.N.Y. 2019) ......................................... 14, 15

*United States v. Shanks*,
    608 F.2d 73 (2d Cir. 1979) .......................................................................43

*United States v. Shellef*,
    507 F.3d 82 (2d Cir. 2007) ......................................... 22, 25, 26, 27

*United States v. Sineneng-Smith*,
    140 S. Ct. 1575 (2020) ...............................................................................9

*United States v. Starr*,
    816 F.2d 94 (2d Cir. 1987) ........................................................... passim

*United States v. Takhalov*,
   827 F.3d 1307 (11th Cir. 2016) ........................................................... 26

*United States v. Ustica*,
   847 F.2d 42 (2d Cir. 1988) ................................................................... 5

*United States v. Wacker*,
   72 F.3d 1453 (10th Cir. 1995) ....................................................... 11, 12

*United States v. Weaver*,
   860 F.3d 90 (2d Cir. 2017) ........................................................... 37, 38

*United States v. Weems*,
   49 F.3d 528 (9th Cir. 1995) .......................................................... 10, 12

## Statutes and Rules

18 U.S.C. § 1001 ................................................................................... 42

18 U.S.C. § 3282 ................................................................................... 40

18 U.S.C. § 3288 ................................................................................... 40

18 U.S.C. § 3553 ................................................................................... 44

Fed. R. Crim. P. 1 ................................................................................... 9

Fed. R. Crim. P. 29 .......................................................................... passim

## Other Authorities

Addison on Torts ............................................................................ 34, 35

Black's Law Dictionary (11th ed. 2019) ............................................... 34

Hascal R. Brill, *Cyclopedia of Criminal Law* (1923) ............................ 36

Dan B. Dobbs et al., *The Law of Torts* (2d ed.) ..................................... 35

W. Page Keeton et al.,
   *Prosser and Keeton on the Law of Torts* (5th ed. 1984) ............................... 34, 35

Restatement (Second) of Torts (1977) ............................................................. 34, 35

2A Charles Alan Wright & Peter Henning,
   *Fed. Prac. & Proc. (Crim.)* (4th ed. 2023) ........................................................8

## INTRODUCTION

The government essentially concedes that (1) sufficiency review is confined to the property theories presented at trial; (2) the sole property theory presented at trial is invalid under *Ciminelli*; and (3) an appellate finding of insufficiency bars retrial. That should be the end of this case.

But instead of consenting to the acquittal to which Defendants are entitled, the government complains that this would be "unfair." It implores the Court to duck sufficiency review and remand for retrial on the theory it originally charged, but ultimately abandoned to obtain a tactical advantage. The protections of the Double Jeopardy Clause, however, cannot so easily be evaded. The Court has a duty—under the Constitution, the criminal rules, and its own precedents—to review Defendants' sufficiency claim and to limit the scope of that review to the theory the government chose to charge and try. That theory is legally invalid.

In the alternative, the government suggests that the evidence is sufficient under the "traditional" theory it discarded before trial. But it offers no legal support for reviewing sufficiency under a theory not charged or tried. And its "traditional theory" arguments misstate the law and conflict with decades of binding Supreme Court and Second Circuit jurisprudence.

The government's attempts to salvage Gerardi's false statement conviction suffer from similar fatal flaws. That conviction should likewise be reversed.

# ARGUMENT

## I.   THIS COURT MUST REVIEW THE SUFFICIENCY OF THE EVIDENCE

The government asks this Court to remand for retrial without considering Defendants' preserved challenge to the sufficiency of the evidence—something this Court has never done in its 132-year history.  The government's arguments for skipping sufficiency review are specious.  This Court has a duty to decide issues properly before it, especially the sufficiency of the evidence in a criminal trial.  Such review is required as a matter of constitutional law, federal procedure, and this Court's consistent practice.  It is also sound policy in this case.

### A.   Sufficiency Review Is Mandatory

#### 1.   *Supreme Court And Second Circuit Precedent Require Sufficiency Review*

As the government concedes, this Court has never held that "it may remand for a new trial without first conducting a sufficiency inquiry."  (U.S.Br.11).[1]  The government claims the question was reserved in *United States v. Bruno*, 661 F.3d 733 (2d Cir. 2011), but *Bruno* provides no support.

While Bruno's honest-services fraud appeal was pending, the Supreme Court narrowed the scope of the honest-services statute in *Skilling v. United States*,

---

[1] "Defs.Br." and "U.S.Br." refer to the post-remand briefs; other citations have the same meanings as in Defendants' prior brief.  (Defs.Br.2 n.1).  Unless otherwise noted, citations omit internal citations, quotation marks, footnotes, and previous alterations, and emphasis is in the original source.

561 U.S. 358 (2010).  The parties agreed that meant Bruno's conviction could not stand, but disagreed on whether the Court could remand for retrial without considering the sufficiency of the evidence under *Skilling*.  Though Bruno raised that challenge only on appeal, not at trial, 661 F.3d at 742, this Court considered it, and allowed retrial only *after* finding the evidence sufficient under the new standard—the opposite of what the government seeks here.  *Id.* at 743-45.  The Court's remark that "in some [other] cases there *may* be sound reasons for refusing to consider the sufficiency of the evidence," *id*. at 743 (emphasis added), was pure dictum.  This Court has never *actually* found any "sound reasons" for such a result.

In fact, this Court has held the opposite.  In *United States v. Hassan*, it granted rehearing to address sufficiency, holding it was "*required* to reach that issue since Hassan's retrial would be barred by Double Jeopardy if the evidence … was insufficient."  578 F.3d 108, 113 n.1 (2d Cir. 2008) (emphasis added).  And in *United States v. Riggi*, this Court held:  "Although we are vacating the convictions on [other] grounds, we *must* reach [any] sufficiency challenges because if the evidence was insufficient, double jeopardy would bar retrial."  541 F.3d 94, 108 (2d Cir. 2008) (emphasis added).  The parties in *Bruno* did not cite these cases, and *Bruno* did not address them.  Nor does the government address them here.

The government also fails to address the Supreme Court's decision in *McDonnell v. United States*, 579 U.S. 550 (2016), which post-dates *Bruno* and

3

flatly contradicts the government's position. In *McDonnell*, the Supreme Court

vacated the defendant's honest-services fraud conviction for jury instruction error.

But the Court did not simply remand for retrial. Instead, "[b]ecause the parties

ha[d] not had an opportunity to address [sufficiency] in light of the interpretation

of [the statute] adopted by this Court," it directed the Fourth Circuit to resolve the

sufficiency issue under the correct interpretation:

> If the court below determines that there is sufficient evidence for a
> jury to convict Governor McDonnell of committing or agreeing to
> commit an 'official act' [under the standard newly announced in
> *McDonnell*,] his case may be set for a new trial. *If the court instead
> determines that the evidence is insufficient, the charges against him
> must be dismissed.*

*Id.* at 580 (emphasis added). Thus, *McDonnell* confirms that sufficiency review is

mandatory and cannot be avoided—even if the law has changed.

### 2. *The Double Jeopardy Clause Requires Sufficiency Review*

Sufficiency review is not just mandatory as a matter of appellate

procedure—it is mandatory as a matter of constitutional law. As stated expressly

in *Hassan* and *Riggi*, and implicitly in *McDonnell*, an appellate court must review

the sufficiency of the evidence to determine whether double jeopardy bars retrial.[2]

---

[2] In *Hoffler v. Bezio*, 726 F.3d 144 (2d Cir. 2013), this Court said it had not yet
decided whether sufficiency review is "constitutionally compelled by the Double
Jeopardy Clause." *Id.* at 162. However, *Hoffler* did not address the cases
discussed above, nor did the parties cite them to the Court. We respectfully submit
the Court should now clarify that sufficiency review is constitutionally required.

"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11 (1978). The prosecution receives "one fair opportunity to offer whatever proof it [can] assemble." *Id.* at 16. If "the evidence [is] legally insufficient, the only 'just' remedy available" is "a judgment of acquittal," and "the Double Jeopardy Clause precludes a second trial." *Id.* at 18. This reflects the Framers' judgment that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187-88 (1957). The prohibition on successive trials is "a constitutional policy of finality for the defendant's benefit." *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

"[W]here the Double Jeopardy Clause is applicable, its sweep is absolute. There are no 'equities' to be balanced …." *Burks*, 437 U.S. at 11 n.6. A finding of insufficient evidence always bars retrial, regardless of why the insufficiency arose or who is to blame. "[R]etrial is never permitted" regardless of "whether [the] failure of proof is the fault of the government or the result of an erroneous ruling by the trial court." *United States v. Ustica*, 847 F.2d 42, 47 (2d Cir. 1988). Even

5

when the proof is insufficient because the trial judge misunderstood the law, *Evans v. Michigan*, 568 U.S. 313, 320 (2013), erroneously excluded evidence, *Sanabria v. United States*, 437 U.S. 54, 68-69, 77-78 (1978), or denied a continuance that the prosecution needed to assemble its witnesses, *Martinez v. Illinois*, 572 U.S. 833, 837-42 (2014) (per curiam), the Double Jeopardy Clause bars retrial.

If courts could bypass sufficiency review whenever the anticipated result seems "unfair," then the Double Jeopardy protection promised in *Burks* would no longer be "absolute," but instead merely a matter of judicial clemency, to be granted or withheld as the "equities" dictate. 437 U.S. at 11 n.6. Such discretion is not allowed, "for the Clause has declared a constitutional policy, based on grounds which are not open to judicial examination." *Id.*; *accord Palmer v. Grammer*, 863 F.2d 588, 592 (8th Cir. 1988) ("*Burks* does not allow an appellate court to reverse for trial error and remand for retrial while ignoring a claim of insufficient evidence."); *United States v. Massey*, 687 F.2d 1348, 1354 (10th Cir. 1982) ("[W]e must review [defendant's] allegation that the evidence … is insufficient" because if it "has merit, the Double Jeopardy Clause precludes a second trial.").

The Supreme Court cases the government cites—all of which pre-date *McDonnell*, *Hassan*, and *Riggi*—do not suggest otherwise.

*Justices of Boston Municipal Court v. Lydon* concerned Massachusetts's two-tiered trial system, where a defendant could elect a bench trial and then, if

6

unsatisfied, proceed to a *de novo* jury trial. 466 U.S. 294, 296-99 (1984). Because the defendant's "absolute right to … the de novo trial" meant he could unilaterally undo any initial conviction, the bench trial constituted "'jeopardy' in only a theoretical sense." *Id.* at 310. In reality, it was merely another "opportunit[y] to be acquitted." *Id.* at 312. No such system is reviewed here. Defendants' trial jeopardy was real—they went to prison for conduct not criminal under the statute. The federal criminal system does not grant defendants "do-overs" upon request.

In *Richardson v. United States*, 468 U.S. 317 (1984), the Supreme Court held that a defendant can always be retried after a hung jury—not the case here. The Court rooted its holding in the "settled line of cases" going back "160 years" establishing that retrial is permitted when "the jury is unable to agree on a verdict"—a line of precedents with "its own sources and logic," *id.* at 323-24, which set it apart from the *Burks* line of cases involving "an appellate finding of insufficiency … following a jury verdict of guilty." *Id.* at 324. This case, like *McDonnell*, falls in the *Burks* line: The jury convicted, and Defendants' preserved sufficiency challenge is squarely presented on direct appeal from that verdict.

Finally, *Lockhart v. Nelson* held that "a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible," even evidence that was "erroneously admitted." 488 U.S. 33, 40-41 (1988). "[W]here the evidence … admitted by the trial court—whether erroneously or

not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial." *Id.* at 34. *Lockhart* is no obstacle here, because Defendants' sufficiency challenge embraces all of the evidence admitted at trial. If anything, *Lockhart* supports Defendants' argument that a reviewing court must determine "whether retrial is permissible."

### 3. Federal Procedure Requires Sufficiency Review

Sufficiency review is mandatory for non-constitutional reasons as well. At the close of the government's case-in-chief, Defendants moved for acquittal under Rule 29(a). (A1392/2078). The district court denied the motion, and Defendants appealed. This Court affirmed, finding the evidence sufficient under the right-to-control theory. The Supreme Court reversed, and the denial of Defendants' Rule 29(a) motion is back before this Court.

Rule 29(a) provides that "the court on the defendant's motion *must* enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a) (emphasis added); *see also Burks*, 437 U.S. at 11 & n.5. A judgment of acquittal is "mandatory." 2A Charles Alan Wright & Peter Henning, *Fed. Prac. & Proc. (Crim.)* § 462 (4th ed. 2023).

An appellate court cannot simply ignore Rule 29's requirements. The Federal Rules of Criminal Procedure "govern the procedure in all criminal proceedings in the United States district courts [*and*] the United States courts of

8

appeals." Fed. R. Crim. P. 1(a)(1). Moreover, "an appellate court's reversal for insufficiency of the evidence is in effect a determination that … the trial court should have entered a judgment of acquittal" as required by Rule 29. *Lockhart*, 488 U.S. at 39. There is no basis to treat appellate review of the denial of a Rule 29(a) motion as a matter of discretion. That "would create a purely arbitrary distinction between those" forced to seek appellate review "and others who would enjoy the benefit of a correct decision by the District Court" in the first instance. *Burks*, 437 U.S. at 11.

More generally, "[i]n the federal judicial system, a defendant convicted of a crime … has the right to challenge the judgment of conviction in a direct appeal." *United States v. Mladen*, 958 F.3d 156, 160 (2d Cir. 2020). The appellants frame the issues, *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020), and when "the appeal as of right is properly here … it is [the Court's] duty to decide the issues presented." *Epperson v. Arkansas*, 393 U.S. 97, 102 (1968); *accord Gold v. Gold*, 187 F. 273, 276 (2d Cir. 1911) ("Our duty is to decide the issues presented to us on appeal.").

This Court has a duty to decide Defendants' preserved sufficiency challenge.

### 4. The Government's Cases Are Unpersuasive And Inapposite

The government cites a collection of out-of-Circuit and other nonbinding cases which, it claims, all "remand[ed] for a new trial without first assessing the

9

sufficiency of the evidence under the new standard" following a so-called "change in law." (U.S.Br.15-17). Even if a panel could disregard this Court's own precedent—it cannot, *see*, *e.g.*, *N.Y. State Citizens' Coal. for Child. v. Poole*, 922 F.3d 69, 81 n.4 (2d Cir. 2019)—it would be misguided to follow those cases.

a. First, those cases are wrong. For varying reasons, they conclude that if the law has changed, retrial is not the "second bite at the apple" barred by double jeopardy, "but a *first* bite under the right legal test." (U.S.Br.17). In their view, the government should not be "held responsible for failing to muster evidence … to satisfy a standard which did not exist at the time of trial." (U.S.Br.16).[3]

The Supreme Court disagrees. *McDonnell* changed the law in the Fourth Circuit, but the Supreme Court nevertheless remanded for the Fourth Circuit to determine whether the government's proof at trial satisfied the newly announced standard. None of the out-of-Circuit cases consider *McDonnell*, and its result cannot be squared with their reasoning. In addition, both the Supreme Court and this Court have held that a finding of insufficient evidence precludes retrial without exception, regardless of whether the result is "fair" to the government. Whether

---

[3] Virtually all of the cases rely, directly or indirectly, on *United States v. Weems*, 49 F.3d 528 (9th Cir. 1995). Notably, *Weems* agrees with Defendants that "[t]he *Burks* rule requires a reviewing court to consider claims of insufficient evidence, even if it finds some other basis for reversal, because a meritorious insufficiency claim absolutely bars retrial." *Id.* at 530. *Weems* creates an exception to this constitutional rule permitting retrial where the insufficiency arises from a change of law, but there is no such exception for the reasons explained here.

10

the government is "responsible" for the failure of proof is simply irrelevant to the application of double jeopardy.

Furthermore, none of these cases considered the mandates of Rule 29(a). This is perhaps understandable. All involved new controlling decisions that were rendered in *other* cases, not reversal on direct review as presented here. Nearly all involved sufficiency challenges brought for the first time on appeal or habeas, rather than a preserved sufficiency challenge like the one here. For instance, in *United States v. Reynoso*, the Court emphasized that "[n]o participant in [defendant's] trial," including the defendant himself, "recognized [the] element the government needed to prove." 38 F.4th 1083, 1091 (D.C. Cir. 2022). Here, by contrast, Defendants challenged the government's theory and moved for acquittal on that ground under Rule 29(a).

The government's cases also are not internally consistent or even coherent. In *United States v. Wacker*, the Tenth Circuit ducked sufficiency review on one count, but also "reverse[d] outright" two other counts for insufficient evidence under the new legal standard. 72 F.3d 1453, 1463-65 & n.10 (10th Cir. 1995). In *United States v. Houston*, the Sixth Circuit reviewed for sufficiency, but did so "under the wrong" standard used at trial. 792 F.3d 663, 669-70 (6th Cir. 2015). The Court acknowledged this was "odd[]," *id.* at 670, but in fact, it was wrong. Even when the Supreme Court announces a new rule, appellate courts must apply

11

that rule to all cases "pending on direct review," with "no exception for cases in which the new rule constitutes a 'clear break' with the past." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)); *accord Henderson v. United States*, 568 U.S. 266, 271 (2013) ("[A]n appellate court must apply the law in effect at the time it renders its decision.") (citing *United States v. Schooner Peggy*, 1 Cranch (5 U.S.) 103, 110 (1801) (Marshall, C.J.)); *United States v. Scarpa*, 913 F.2d 993, 1019 (2d Cir. 1990).

b. Even if these out-of-Circuit cases had merit, their rationale does not apply here. This is not a situation in which the government bears no responsibility for the insufficiency of the evidence. In most of the cited cases, the intervening decision added a new element or requirement to the government's burden of proof.[4] The courts held that double jeopardy did not bar retrial because the government had no reason to satisfy an element that did not previously exist.

But *Ciminelli* did not impose any new element or "change the law" in any analogous way. It held that the right-to-control theory violates a line of precedent beginning with *McNally v. United States*, 483 U.S. 350 (1987), which "consistently

---

[4] *See Reynoso*, 38 F.4th at 1090-91 (knowledge of prior felony); *United States v. Harrington*, 997 F.3d 812, 817-19 (8th Cir. 2021) (heroin was "but for" cause of death); *Houston*, 792 F.3d at 666-70 (subjective awareness of wrongfulness of threat); *United States v. Kim*, 65 F.3d 123, 125-27 (9th Cir. 1995) (knowledge that structuring was illegal); *Weems*, 49 F.3d at 530-31 (same); *Wacker*, 72 F.3d at 1463-65 ("active employment" of firearm).

12

rejected … federal fraud theories that stray from traditional concepts of property." *Ciminelli*, 598 U.S. at 314-15. Though the government speaks of now having "the benefit of the Supreme Court's … ruling in *Ciminelli*" (U.S.Br.17), *Ciminelli*'s pronouncement was no surprise to the government. Defendants repeatedly alerted the government to the defects in the right-to-control theory and challenged the theory at every possible opportunity. The government's merits brief in the Supreme Court *conceded* that the right-to-control theory violated the law *then in existence*. *Ciminelli*, 598 U.S. at 316 (citing *Ciminelli* U.S.Br., at 24-26). The same law was in effect in 2018, when the government elected to try Defendants only on the right-to-control theory and abandoned its initial reliance on a traditional property theory.

For this reason, retrial on a traditional property theory absolutely is the "second bite" with which the Double Jeopardy Clause is most concerned. The government initially charged Defendants on a traditional property theory, and litigated the case under that theory for a year before deciding to amend its indictment and rely exclusively on the right-to-control theory. (Defs.Br.5-6). The retrial the government now seeks is a second bite at the traditional property theory it originally charged but then abandoned. Trying Defendants one theory at a time is the very core of what the Double Jeopardy Clause prohibits.

13

Under these circumstances, reviewing the sufficiency of the evidence is not unfair to the government.  Despite the government's protest (U.S.Br.16), "this is not a case where considering the sufficiency of the evidence would deny the government an opportunity to present its evidence."  *Bruno*, 661 F.3d at 743.  It already had that opportunity:  Nothing *required* the government to elect between a traditional property theory and the right-to-control theory.  It could easily have pursued both theories, and Defendants' sustained attack on the right-to-control theory's validity gave it ample "reason" and "incentive" (U.S.Br.16) to do so.  (*See* Point I.B *infra*).  The government *chose* to proceed *exclusively* on a right-to-control theory, despite the risk of resting its entire case on so shaky a foundation, because abandoning a traditional property theory secured it significant courtroom advantages.  (Defs.Br.6; *see also Ciminelli* Oral Arg. Tr. 60 (conceding that right-to-control was an "easier route to prove to a jury")).  It is not unfair to hold the government to the consequences of that eyes-open choice.

c.  The government's reliance on *United States v. Sepulveda* is misplaced for similar reasons.  420 F. Supp. 3d 153 (S.D.N.Y. 2019), *abrogated on other grounds by United States v. Miller*, 954 F.3d 551 (2d Cir. 2020).  First, unlike this case, *Sepulveda* involved a new "knowledge" element the government previously did not have to prove.  *Id.* at 168.  Second, *Sepulveda* decided a discretionary Rule 29(c) motion, rather than a mandatory Rule 29(a) motion.  *Id.*  Third, *Sepulveda*

14

did not mention this Circuit's precedents requiring sufficiency review because neither party brought them to Judge Sullivan's attention.[5]  Fourth, the defendant cited "no authority" supporting sufficiency review "under a supervening legal standard, rather than the standard that applied at the time of the trial."  *Id.*  Here, Defendants cite many such authorities, including *McDonnell* and *Johnson*.

In sum, sufficiency review is mandatory, not optional or discretionary.

**B.    Sufficiency Review Is Fair And Prudent Here**

Sufficiency review is also warranted under this Circuit's longstanding "prudential rule generally requiring reviewing courts to consider preserved sufficiency challenges before ordering retrials based on identified trial error." *Hoffler*, 726 F.3d at 162.  "[T]he courts of appeals, our own included, are unanimous in concluding that such [sufficiency] review is warranted, at a minimum, as a matter of prudent policy."  *Id.* at 161-62.

1.  There is no reason for the Court to depart from its rule in this case.  As explained above, applying the rule would be entirely fair to the government and to Defendants.  (*See* Point I.A.4.b *supra*).  It would also conserve judicial resources. "[I]f a reviewing court were to order a new trial without addressing a sufficiency challenge, it 'could result in the futility of a second conviction that would have to

---

[5] *See United States v. Sepulveda*, No. 18 Cr. 363 (RJS) (S.D.N.Y.), Dkt. 97 (supplement to post-trial motion); Dkt. 99 (government response); Dkt. 100 (defendant's reply).

15

be reversed in a second appeal.'" *Hoffler*, 726 F.3d at 162 (quoting *United States v. Allen*, 127 F.3d 260, 264 (2d Cir. 1997)).

2.  The government warns that "[i]f retrial were barred whenever a change in law retroactively rendered the evidence insufficient," prosecutors would have to guard against "a change in prevailing circuit law" by pursuing "alternate theories." (U.S.Br.14-15).  But this is neither unfair nor undesirable.  Litigants must always anticipate changes in prevailing law or suffer the consequences.  Criminal defendants, for example, must preserve their objections to prevailing Circuit law— as Defendants did here—or be stuck with plain-error review.  *Henderson*, 568 U.S. at 273-74; *Johnson*, 520 U.S. at 465-66.  And the government routinely pursues alternative theories.  *See*, *e.g.*, *Sekhar v. United States*, 570 U.S. 729, 732 (2013) (three theories of property).

In fact, the government has pursued alternative theories in nearly every right-to-control prosecution before this one, including *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017), *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015), and many of the cases it cited in its brief opposing certiorari.[6]  It could easily have done so here.  There was no risk its evidence of traditional fraud would have been "disallowed as irrelevant or unnecessarily duplicative."  (U.S.Br.14).  On the

---

[6] Br. for U.S. in Opp., *Percoco v. United States*, No. 21-1158, 2022 WL 1670844, at *21 (U.S. filed May 24, 2022); *see also* Pet. for Cert., *Ciminelli v. United States*, No. 21-1170, 2022 WL 566444, at *34-35 (U.S. filed Feb. 18, 2022).

contrary, the government limited itself to the right-to-control theory to ensure that *defense* evidence would be excluded. (Defs.Br.5-6).

3. The government's attempt to evade sufficiency review is especially improper because it contradicts the government's position in the Supreme Court. There, the parties agreed the question before the Supreme Court was whether the "evidence was insufficient" to support the convictions. *Ciminelli* U.S.Br., at 31; *accord id.* at I (Question Presented). The government conceded its right-to-control theory was erroneous, but it *did not argue* the proper remedy was remand for retrial without sufficiency review. Instead, it swung for the fences, arguing the "evidence was plainly sufficient" under a traditional property theory and the convictions "should be affirmed." *E.g.*, *id.* at 15, 48. Now that the Supreme Court has rejected that argument and taken affirmance off the table, the government cynically shifts position, insisting to this Court that sufficiency review would be unfair. This Court should not condone the government's attempt to have its cake and eat it too.

Thus, even if it were not mandated, sufficiency review would be warranted.

## II. ACQUITTAL IS REQUIRED BECAUSE THERE WAS NO VALID THEORY OF PROPERTY AT TRIAL

Though the government argues at length about whether the Court should engage in sufficiency review, it does not seriously dispute that the scope of sufficiency review is confined to the theories presented at trial. In their post-

17

remand brief, Defendants cited multiple Second Circuit cases supporting that proposition. (Defs.Br.11-12, 16). Defendants also cited multiple Supreme Court and Second Circuit cases holding that when the Court reviews the sufficiency of the evidence, it is limited to the theories charged in the indictment. (Defs.Br.13).

The government has no meaningful response to this solid wall of precedent. It suggests the cases Defendants cited are distinguishable because they addressed whether to affirm a conviction, not whether to remand for retrial. (U.S.Br.18-20). But this is a distinction without a difference. Whenever the Court reviews a conviction, it will either find no reversible errors and affirm, find only ordinary trial error and remand, or find the evidence insufficient and direct an acquittal. The alternatives here are acquittal or remand not because this case calls for a peculiar analysis not contemplated in cases like *United States v. Schwartz*, 924 F.2d 410 (2d Cir. 1991), which limit the scope of sufficiency review to the theory presented at trial (Defs.Br.16), but because a critical instructional error takes affirmance off the table.

The government also claims that *Bruno* permits retrial so long as the evidence was sufficient under the new legal rule. (U.S.Br.17-18). But *Bruno* very clearly *does not address* whether an appellate court reviewing the denial of a Rule 29(a) challenge may review the evidence under a theory not charged in the indictment or tried to the jury. The *Bruno* defendant never raised the issue. To the

18

contrary, he *invited* the Court to review whether "the record of the first trial …

support[ed] a conviction under a bribery or kickback theory of honest services

fraud subsequently required by *Skilling, even though* the theory was not asserted in

the Indictment or charged to the jury." *Bruno*, 661 F.3d at 742 (emphasis added).

Here, Defendants do not waive the limits on sufficiency review established by

*Schwartz* and similar cases.

The government agrees that right-to-control was the only theory of property

below. (U.S.Br.2-6). That theory is "not a valid basis for liability" and "cannot

form the basis for a conviction under the federal fraud statutes." *Ciminelli*, 598

U.S. at 309, 316. Thus, if the district court had decided Defendants' Rule 29(a)

motions as Supreme Court precedent requires, it would have had to grant them.

This Court, reviewing the district court's denial *de novo*, must now reverse, and

direct the district court to enter a judgment of acquittal. (Defs.Br.15-17).

## III. THE EVIDENCE IS INSUFFICIENT EVEN IF MEASURED UNDER A TRADITIONAL PROPERTY FRAUD THEORY

Even if the government *could* shift to a traditional property fraud theory, the

evidence does not support any such theory. (Defs.Br.18-32). There was no proof

that Fort Schuyler was deprived of the benefit of its bargain or that Defendants

otherwise intended it any economic harm. The government tries to cover up this

deficiency by watering down the requirements of wire fraud. It offers a shifting

account of the statutory elements that lacks any basis in law. It resorts to common-

19

law tort treatises and inapposite cases because its arguments cannot fit the confines of binding precedent. And, perhaps most tellingly, it is unable to cite a single case upholding a conviction on remotely similar facts. This was a business transaction in which both sides delivered what was promised. That should end the case.

### A.     There Is No Fraud Without Proof That The Defendant Intended To Deprive The Alleged Victim Of The Benefit Of The Bargain

In *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970), *United States v. Starr*, 816 F.2d 94 (2d Cir. 1987), and other cases, this Court established and then reaffirmed the basic rule of law that decides this appeal: If the defendant intends an exchange of fair value in a completed transaction, such that the victim receives what it paid for, that is not property fraud. The government attempts to mischaracterize or minimize the "pronounce[ments]" in those decisions (U.S.Br.33), but this Court (like other Circuits) has repeatedly adhered to that fundamental tenet of fraud law.

Though the government mystifyingly claims that the benefit-of-the-bargain rule "is found nowhere in *Regent* or *Starr*" or "any other" case (U.S.Br.33), this Court has summarized *Regent* exactly the way Defendants do: "In *Regent* …. [t]he misrepresentations … did not go to the basis of the customers' bargain with the salesmen. The customers *received exactly what they paid for* and no customer testified that he had been cheated. On the basis of these facts, we concluded in *Regent* that defendant did not contemplate an actual injury to the alleged victims of

20

the fraud.  At most, the evidence had shown an intent to deceive and to induce the customers to enter into the transaction.  Absent any evidence of an intent to harm the victims, however, we concluded that the evidence was insufficient to demonstrate a fraudulent intent as required by the mail fraud statute."  *Starr*, 816 F.2d at 98 (emphasis added).

This Court has also summarized *Starr* the same way Defendants do:  "[I]n *United States v. Starr* …. we held [that the defendants' conduct] did not constitute mail fraud against the customers, because *they had 'received exactly what they paid for'* and 'there was no discrepancy between benefits reasonably anticipated and actual benefits received.'"  *Binday*, 804 F.3d at 570 n.10 (quoting *Starr*, 816 F.2d at 99) (emphasis added).

The language and import of these cases is clear.  The government simply chooses to ignore it, just as it ignores the many other cases applying the same rule.  For instance, in *United States v. Novak*, 443 F.3d 150 (2d Cir. 2006), this Court held the fraud statutes require proof of "intent to harm" and that "the harm contemplated … must affect the very nature of the bargain itself."  *Id.* at 159 (quoting *Starr*).  "[A]s in *Starr*, the [purported victims] *received all they bargained for*, and [the defendant's] conduct did not affect an essential element of those bargains."  *Id.* (emphasis added).  Thus, "the evidence [wa]s insufficient to show the requisite intent to harm."  *Id.*  Similarly, in *United States v. Mittelstaedt*, 31

21

F.3d 1208 (2d Cir. 1994), the Court "disagree[d]" with the government's contention that "it does not matter whether the [putative victims] would have suffered some economic loss if the scheme had been successful." *Id.* at 1217. Likewise, in *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007), the Court held that the indictment was insufficient because it did not allege that the defendant "misrepresented 'the nature of the bargain'" or "that there was a 'discrepancy between benefits reasonably anticipated' and actual benefits received." *Id.* at 109 (quoting *Starr* and *Regent*). These cases remain binding after *Ciminelli*. The government cannot wish them away by failing to address them.

### B. The Government's Arguments Regarding "Actual Loss," "Permanent Loss," And "Monetary Loss" Are Irrelevant

Rather than confront this binding precedent, the government spills much ink knocking down strawman arguments Defendants have never made.

We are not arguing that the government must prove "the victim *actually* relied on the defendant's misrepresentations" or that "actual harm" materialized. (U.S.Br.26-27; *see also* U.S.Br.40-41). Defendants agree that "only a 'scheme to defraud' … is required," and "the accused need not have succeeded in his scheme to be guilty." *Regent*, 421 F.2d at 1180. "But this does not mean that the government can escape the burden of showing that some actual harm or injury was contemplated by the schemer." *Id.* It *does* "matter whether the [putative victims] would have suffered some economic loss if the scheme had been successful,"

22

*Mittelstaedt*, 31 F.3d at 1217, as the government alleges here (U.S.Br.37). "The victim's loss must be an objective of the deceitful scheme …." *Kelly v. United States*, 140 S. Ct. 1565, 1573 n.2 (2020); *accord id.* at 1573 ("*loss* to the victim" must be "an 'object of the fraud'") (emphasis added). Thus, while actual harm is not required, since the statute targets the inchoate scheme, the government must prove that *if* the scheme were to succeed, it would result in some economic harm to the purported victim. (Defs.Br.19-24).

Contrary to the government's argument (U.S.Br. 37, 39, 40), mere awareness of a risk of harm—*i.e.*, recklessness—is insufficient. The government's sole authority for diluting the intent element is a line in *Regent* requiring evidence "that some actual injury to the victim, however slight, is a reasonably probable result of the deceitful representations if they are successful." 421 F.2d at 1182. But *Regent* itself clarifies that "the purpose of the scheme must be to injure," *id.* at 1181, and *Kelly* and *Mittelstaedt* say the same thing. And this Court has squarely held that merely recognizing a scheme's "capacity to cause harm" is not sufficient. *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999).

Likewise, Defendants agree that if the victim is "temporarily deprive[d]" of property in a manner contrary to the parties' bargain, it is no defense to argue that "ultimately" the victim will be made whole and suffer no "permanent loss." (U.S.Br.30-32). But Defendants' arguments do not turn on any distinction between

23

temporary and permanent loss.  This was not a loan or an investment.  Defendants do not argue that they intended to repay Fort Schuyler or return its money at some later date.  This issue has no relevance here.

Finally, Defendants are not arguing that the government must prove "financial," "pecuniary," or "monetary" loss in some narrower sense than what this Court's precedents require.  (*E.g.*, U.S.Br.27, 30).  Wire fraud requires proof that the defendant intended "tangible" "economic" loss.  *E.g.*, *Mittelstaedt*, 31 F.3d at 1217.  The loss of an explicit, bargained-for contractual benefit can suffice.  (U.S.Br.34-35 (citing *Schwartz*, 924 F.2d 410)).  Thus, delivering a "Giorgione," rather than the promised "Titian," might be fraud even if the paintings had the same market price.  (U.S.Br.28).  But that is irrelevant here:  The government does not dispute that Fort Schuyler received everything it was promised under the parties' contracts.  (Defs.Br.26-29).

### C.    There Is No Merit To The Government's Claim That Merely "Inducing" The Payment Of Money Constitutes "Harm"

The government contends any misrepresentation "material" enough to "induce" a transaction is fraud, even if the defendant has no intention of depriving the "victim" of the benefit of its bargain.  For instance, the government suggests the "requirement of contemplated harm" merely means the misrepresentations must be "material."  (U.S.Br.36; *see also* U.S.Br.34-35).  And it asserts that to

24

prove "intent to defraud," it need only show that Defendants "inten[ded] to induce reliance" on their misrepresentations. (U.S.Br.25-26; *see also* U.S.Br.30-31).

This novel fraud theory suffers the same flaws that led the Supreme Court to reject the right-to-control theory. The right-to-control theory improperly allowed fraud convictions based on "harms to intangible interests unconnected to property," *Ciminelli*, 598 U.S. at 313, lacked any grounding in early mail- and wire-fraud precedent, *id.* at 314, and "vastly expand[ed] federal jurisdiction," "criminaliz[ing] traditionally civil matters and federaliz[ing] traditionally state matters," *id.* at 315-16. The government's new fraudulent-inducement theory similarly dispenses with the harm-to-traditional-property requirement, is bereft of historical support, and is even more expansive than the "vastly" overbroad right-to-control theory, which at least demanded more than a deceitful inducement to spend money.

*1. This Court's Precedents Foreclose The Government's Theory*

The government does not even bother to address the binding authorities that foreclose its arguments. This Court has repeatedly held that "inducement" alone does not satisfy the intent-to-harm requirement. For instance, in *United States v. Jabar*, which the government repeatedly cites, the Court held that "intent to deceive or induce customers into the transaction [is] not a fraudulent intent." 19 F.4th 66, 77 (2d Cir. 2021); *see also Shellef*, 507 F.3d at 109 (insufficient to allege that "misrepresentation induced [victim] to enter into a transaction it would

25

otherwise have avoided"); *Novak*, 443 F.3d at 157 (fraud not proved merely because "victims would not have entered into the transaction had they known of the deception"); *id.* at 159 ("inadequate" to argue that putative victims "would not have paid … had they been aware" of the truth); *Mittelstaedt*, 31 F.3d at 1217 ("lack of information that might have an impact on the decision regarding where … money is spent, without more, is not a tangible harm"); *Regent*, 421 F.2d at 1181 ("[A]n intent to deceive, and even to induce, may have been shown; but this does not, without more, constitute the 'fraudulent intent' required by the statute.").

Thus, it is not enough that deceit induced the transaction. Rather, the deceit "must bear on the ultimate value of the transaction." *Mittelstaedt*, 31 F.3d at 1217. And as this Court held in *Jabar*, "the misrepresentations must be *central … to the bargain* between the defendant and the victim." 19 F.4th at 77 (citing *Starr* and *Schwartz*) (emphasis added). Deceitful inducement, by itself, does not meet this high standard, even if the victim hands over money as a result.

That is true not only in this Circuit—several other Courts of Appeals agree and have expressly relied on this Court's caselaw. *See United States v. Guertin*, 67 F.4th 445, 451-52 (D.C. Cir. 2023) (where lies do not "deprive the [victim] of the benefit of its bargain," there is no fraud, even if victim pays money) (citing *Shellef* and *Mittelstaedt*); *United States v. Takhalov*, 827 F.3d 1307, 1313-14 (11th Cir. 2016) (where "defendant lies about something" other than price or essential

characteristics of goods, "he has not lied about the nature of the bargain" and there is no fraud) (citing *Shellef*, *Starr*, and *Regent*); *United States v. Sadler*, 750 F.3d 585, 590-92 (6th Cir. 2014) (where deceived party received standard asking price for property, there is no fraud); *United States v. Bruchhausen*, 977 F.2d 464, 467 (9th Cir. 1992) (where victims "may have been deceived into entering sales that they had the right to refuse" but "suffered no monetary loss," there is no fraud).

    2. *The Supreme Court Has Never Endorsed The Government's Theory*

    a.  Contrary to the government's claims, the Supreme Court has never held that "intent to defraud" means nothing more than "intent to induce reliance" on a misrepresentation.  (U.S.Br.25-26 (citing *Carpenter v. United States*, 484 U.S. 19 (1987), and *Chiarella v. United States*, 445 U.S. 222 (1980))).

    In *Carpenter*, the Supreme Court clearly required more:  "[T]he words 'to defraud' in the mail fraud statute have the 'common understanding' of '*wronging one in his property rights* by dishonest methods or schemes,' and 'usually signify the *deprivation of something of value* by trick, deceit, chicane or overreaching.'" 484 U.S. at 27 (emphasis added).  *Chiarella* involved securities fraud under Rule 10b-5, and did not address the question.  The government quotes a sentence that mentions "inducing reliance," but ignores that the Court's point—irrelevant here— was that unlike a fraudulent "fail[ure] to disclose," a misrepresentation is actionable even without any "duty to disclose."  445 U.S. at 227-28.

Most inexplicable is the government's failure to address *Kelly*, where the Supreme Court made clear that inducing reliance is *not* enough. The defendants there duped the Port Authority into shutting down lanes on the G.W. Bridge. 140 S. Ct. at 1568-70, 1574. In reliance on defendants' lie, Port Authority "engineers spent valuable time," and the Port Authority "incur[red] [the] cost" of "extra toll collectors." *Id.* at 1570. Yet the Supreme Court reversed the wire-fraud convictions, *id.* at 1572-74, because merely inducing reliance, and even causing damage, is not fraud. Rather, "[t]he victim's loss must be an objective of the deceitful scheme." *Id.* at 1573 n.2; *accord id.* at 1573; *Skilling*, 561 U.S. at 400 (property fraud involves schemes where "the victim's loss of money or property supplie[s] the defendant's gain"); *McNally*, 483 U.S. at 358 ("defraud" means "wronging one in his property rights") (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)); *United States v. Avenatti*, 81 F.4th 171, 194 n.27 (2d Cir. 2023) (discussing "the loss-of-property element of traditional fraud").

b. Nor has the Supreme Court ever endorsed the government's argument that "obtain[ing] the victim's property" is sufficient "harm," even if the victim receives all it bargained for. (U.S.Br.27, 31-32).

*McNally* stands for the opposite proposition. Defendants there obtained part of the Commonwealth's insurance premiums in the form of commissions. But the Supreme Court reversed because there was no jury finding that the Commonwealth

28

"was defrauded of any money or property," or "that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance." 483 U.S. at 360. The government focuses on the statute's "obtaining money or property" language (*see* U.S.Br.23-25), while ignoring that a scheme "to defraud" requires harm or loss ("wronging one in his property rights," by "deprivation of something of value," *McNally*, 483 U.S. at 358). This is the same error that resulted in reversal in *McNally*: construing the "scheme to defraud" and "obtain money or property" requirements in the disjunctive, rather than as a unitary whole requiring contemplated harm to a traditional property interest. *See id.* at 358-59; *Kelly*, 140 S. Ct. at 1571.

The government relies heavily on *Shaw v. United States*, 580 U.S. 63 (2016), but *Shaw* has nothing to do with bargained-for exchanges of value. The defendant used a bank customer's account number to "transfer funds from [the] account" to himself. *Id.* at 65. He said he wasn't guilty of bank fraud because "he intended to cheat only a bank depositor, not a bank." *Id.* He did not argue that he earned the money in a fair transaction, because there was no transaction—just theft.

The Supreme Court rejected his argument because "the bank, too, had property rights in [the] account" as either an "owner" or "bailee" with "the right to use the funds as a source of loans." *Id.* at 66. That an "insurance company" would

29

"ultimately" reimburse the "financial loss" did not excuse the "scheme to deprive the bank of [its] property rights," at least temporarily. *Id.* at 67-68.

In a bargained-for exchange like the one here, however, there is no "deprivation" unless one party fails to fulfill its side of the bargain. An agreement to exchange money for goods or services does not harm property rights just because the seller "obtains" money the buyer "owned." This Court recently rejected that exact theory, because a transaction without "pecuniary harm" involves no "harm to property rights," and *Ciminelli* "cast doubt" on whether such a transaction could be "fraud." *SEC v. Govil*, 86 F.4th 89, 104-05 (2d Cir. 2023).

If the government's theory were correct, then *all* transactions induced by deceit would amount to fraud—a proposition this Court has repeatedly rejected, both before and after *Shaw*. (*See* Points III.A, III.C.1 *supra*). As discussed, other Courts of Appeals have rejected it as well. The government's invitation to misread *Shaw* would require this Court not only to abrogate its own binding precedent (which a panel lacks authority to do, *see Govil*, 86 F.4th at 102; *N.Y. State Citizens' Coal.*, 922 F.3d at 81 n.4), but also to create a Circuit split.

As the government notes, *Shaw* quoted this Court's *dicta* in *United States v. Rowe*, that "[a] man is none the less cheated out of his property, when he is induced to part with it by fraud, because he gets a quid pro quo of equal value." 56 F.2d 747, 749 (2d Cir. 1932). That observation may apply in certain limited

30

circumstances, such as the substitution of a Giorgione for the bargained-for Titian. (U.S.Br.28). But neither *Shaw* nor *Rowe* applied it to facts remotely similar to this case. *Shaw* involved outright theft. And "in *Rowe* itself, the victims suffered a definable harm because they were induced to pay large sums of money for worthless property." *Starr*, 816 F.2d at 101. Thus, "taken in its factual context," "neither the *Rowe* case nor the language quoted will support the conclusion that no definable harm need be contemplated by the accused to find him guilty of mail fraud." *Regent*, 421 F.2d at 1181-82. Indeed, because *Rowe* "was thoroughly distinguished in *Regent*," this Court has made clear that "there can be no doubt that *Rowe* has been deprived of much of its vitality." *Starr*, 816 F.2d at 101.

None of the other Supreme Court cases cited by the government (U.S.Br.27, 29-30) support its payment-as-harm theory either. Both *Carpenter* and *Loughrin v. United States*, 573 U.S. 351 (2014), involved theft, not commercial transactions. In *Carpenter*, the defendant misappropriated his employer's "confidential business information." 484 U.S. at 26-27. In *Loughrin*, the defendant "rifled through residential mailboxes and stole any checks he found." 573 U.S. at 353. *Loughrin* also concerned a specialized prong of the bank-fraud statute that has no analog in the wire-fraud statute, and is irrelevant here. *See id.* at 359-61, 366 n.9.

Both *Durland v. United States*, 161 U.S. 306 (1896), and *United States v. Sampson*, 371 U.S. 75 (1962), involved classic swindles. In *Durland*, the

31

defendant sold bonds "without a thought that he or the company would ever make good its promises." 161 U.S. at 314. In *Sampson*, the defendants "falsely … represented that they would perform" services that they "did not intend to and in fact did not make any substantial efforts to perform." 371 U.S. at 77-78.

None of the government's cases involved a bargained-for exchange in which the victim got what it paid for. Thus, none lends any support to the government's argument that "harm" invariably occurs whenever the purported victim pays money, even in a fair exchange.

### 3. This Court Has Not Endorsed The Government's Theory

The Second Circuit cases cited by the government (U.S.Br.30-31) do not support its position either. In *United States v. Muratov*, the defendants schemed to "defraud Indian diamond merchants through false promises to obtain property— namely, diamonds—on credit, *with no intention to pay*." 849 F. App'x 301, 306 (2d Cir. 2021) (summary order) (emphasis added). In *United States v. Males*, the defendant made false promises of "exorbitant [investment] returns" to access and "freeze" a victim's "pension account" so that the victim "would not have access." 459 F.3d 154, 156, 158-59 (2d Cir. 2006). In *United States v. Guadagna*, the defendant participated in a telemarketing scam in which he "misle[d] [a victim] by suggesting that she had won a car and that she was somehow required to purchase overpriced air filters to claim her prize." 183 F.3d at 131. These were all classic

32

"rip off" schemes, in which the victim got far less than the defendant promised—not exchanges of fair value.

In fact, these cases contradict the government's position. *Males* held that, to commit fraud, the defendant had to contemplate "some actual economic harm or injury to the victim." 459 F.3d at 159. *Guadagna* similarly held that "the government needed to establish" that the defendant's "misrepresentations were intended to harm [his] customer[s]." 183 F.3d at 132. Even if the "defendant realizes that the scheme … has the capacity to cause harm," that "is not sufficient" to show "fraudulent intent." *Id.* at 129. This Court has also issued many other opinions with similar holdings that the government cannot explain away. (*See* Defs.Br.31 (citing *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994) ("the defendant must intend to harm the fraud's victims"); *Starr*, 816 F.2d at 98 ("Only a showing of intended harm will satisfy the element of fraudulent intent."); *Regent*, 421 F.2d at 1181 ("[T]he purpose of the scheme must be to injure …."))).

### 4. *Common-Law Principles Do Not Support The Government's Theory*

Its position foreclosed by binding precedents, the government resorts to common-law tort treatises. It made the same arguments to the Supreme Court, which declined to consider them. There is even less reason for this Court to do so—indeed, this Court cannot consider arguments that conflict with its precedents. *See Govil*, 86 F.4th at 102; *N.Y. State Citizens' Coal.*, 922 F.3d at 81 n.4.

In any event, the government is wrong about the common law. Its claim that the common-law definition of "intent to defraud" includes "intent to induce reliance" but not "intent to harm" (U.S.Br.25-26, 28) ignores that "pecuniary harm is an element" of "common-law deceit and misrepresentation." *Govil*, 86 F.4th at 104 (citing Restatement (Second) of Torts § 525 (1977)).

At least two of the treatises the government cites expressly state that inducement to enter a contract is not fraudulent without loss:

> If a defendant has made a false representation … with intent to induce, and has thereby induced the plaintiff to enter into a contract into which, but for that representation, he would not have entered, *and the plaintiff has been damnified by the falsehood*, a case of fraud is made out ….

Addison on Torts (emphasis added), as quoted in *McAleer v. Horsey*, 35 Md. 439, 454 (1872).[7]

> [T]here can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been, as where for example he receives all the value that he has been promised and has paid for ….

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 110, at 765 (5th ed. 1984) ("Prosser").

---

[7] "**damnify** *vb.* (16c) To cause loss or damage to; to injure <the surety was damnified by the judgment obtained against it>." Black's Law Dictionary (11th ed. 2019).

More generally, the government's own sources confirm that common-law fraud requires loss:

- "One who fraudulently makes a misrepresentation … is subject to liability to the other in deceit *for pecuniary loss* …."  Restatement (Second) of Torts § 525 (1977) (emphasis added) (quoted in *Govil*, 86 F.4th at 104).

- "[I]f a falsehood be knowingly told, with an intention that another should believe it to be true and act upon it, and that person does act upon it and *thereby suffers damage*, the party telling the falsehood is responsible in damages in an action for deceit …."  Addison on Torts (emphasis added).

- "[F]raud" requires an "intentional misrepresentation" that "proximately causes harm," which "typically must be pecuniary in nature."  Dan B. Dobbs et al., *The Law of Torts* § 664 & n.2 (2d ed. 2023) ("Dobbs").

- "Since the modern action of deceit is a descendant of the older action on the case, it carries over the requirement that the plaintiff must have suffered substantial damage before the cause of action can arise."  Prosser § 110.

The government contends the equitable remedy of rescission was available even without proof of financial harm.  (U.S.Br.27-28.)  But "[e]quity … afford[s] discretionary relief to parties where relief would not have been available under the 'rigors of the common law.'"  *Trump v. Hawaii*, 138 S. Ct. 2392, 2427 (2018) (Thomas, J., concurring).  Statutes based on the common law incorporate common-law restrictions, not the discretionary tools of equity.  And in any event, rescission was not available without proof of "injur[y]."  *Atl. Delaine Co. v. James*, 94 U.S. 207, 214 (1876); *see Russell v. Indus. Transp. Co*., 113 Tex. 441, 454 (1924) ("pecuniary injury"); Dobbs § 664 ("plaintiff did not get what she bargained for").

35

Finally, the government argues that the "mens rea for the crime of false pretenses" is satisfied by the defendant's intent to induce reliance on misrepresentations. (U.S.Br.26). As with common-law fraud, however, the government ignores that if the victim "sustains no injury the offense is not committed." Hascal R. Brill, *Cyclopedia of Criminal Law* § 1271 (1923); *see State v. Palmer*, 50 Kan. 318 (1893) ("Though money is obtained by misrepresentation, if no injury follows, no crime is accomplished."); *State v. Casperson*, 71 Utah 68 (1927) ("the crime is not committed" if victim "gets … what he bargained for").

*     *     *

The law in this Circuit, and elsewhere, is abundantly clear: If the defendant intends an exchange of fair value in a completed transaction, such that the victim receives what it paid for, that is not property fraud. The government has offered no valid basis for applying a different rule.

### D.     The Evidence At Trial Was Insufficient

A rational jury could not have convicted Defendants under the correct legal standard. That is why the government abandoned any traditional theory of wire fraud before trial. (Defs.Br.5-6). And that is why the government is eager for this Court to remand without considering the sufficiency of the evidence.

In a business transaction, the parties' "contractual obligations" set forth the "essential element[s]" of their bargain. *Novak*, 443 F.3d at 159 (citing, *e.g.*,

36

*Schwartz*); *see also Starr*, 816 F.2d at 100 (no fraud where victim could not "legally claim a right" to more than "the service for which they had paid").[8]  The government concedes that Fort Schuyler received the *full benefit of its bargain* as set forth in the parties' contracts.  (Defs.Br.26-29).  Under this Court's precedents, that is the end of the matter.  The evidence did not prove wire fraud, and a judgment of acquittal is required.  (*See* Point III.A *supra*).

The government mischaracterizes Defendants' argument as a "disclaimer or integration clause defense" of the sort rejected in *United States v. Weaver*, 860 F.3d 90 (2d Cir. 2017).  (U.S.Br.40).  The contracts between Defendants and Fort Schuyler are relevant not because they contain disclaimers, but because they define the bargain between the parties, and because they weren't breached.  The government does not dispute that the contracts did not even contain any representation about a competitive process.  (Defs.Br.26-29).

*Weaver* is irrelevant.  In *Weaver*, the defendant scammed customers into purchasing vending machines by "promising them utterly unrealistic earnings and claiming that the investments were sound."  860 F.3d at 93.  The customers signed contracts containing disclaimers of reliance on oral representations.  *Id.*  "When

---

[8] The Court's statement in its prior opinion that "[t]he bargain at issue was not the terms of the contracts ultimately negotiated," but "Fort Schuyler's ability to contract" armed with "potentially valuable economic information," *United States v. Percoco*, 13 F.4th 158, 172 (2d Cir. 2021), was premised on the right-to-control doctrine invalidated by the Supreme Court.

37

customers expressed concern about these disclaimers, [defendant's] salespeople misleadingly dismissed the provisions as unimportant 'legalese' or 'mumbo-jumbo.'"  *Id.*  This Court held that the disclaimers did not trump the false oral representations or render them immaterial.  *Id.* at 95-96.  Indeed, the defendant had misled customers about the disclaimers, *id.* at 95 n.6, and, most importantly, about *what they were paying for*, by "induc[ing] gullible victims to make worthless investments."  *Id.* at 96.  *Weaver* might be analogous if Defendants made misrepresentations about their construction services, but that is not what happened.

The government cannot rewrite the bargain as an exchange of payments for "the services of a developer who had been selected through a fair, open, and competitive process."  (U.S.Br.39-40).  Misrepresenting one's intent to comply with contractual obligations may be fraud, as in *Schwartz*.  Misrepresenting the value of what one is providing to an investor may be fraud, as in *Weaver*.  But misrepresenting how Defendants got to the bargaining table with Fort Schuyler does not fit within either paradigm: as the contracts make clear, that is not what Fort Schuyler was paying for.  If anything, it is closest to the inducements in *Regent*, which were held not to be fraudulent.

Grasping for a more concrete theory, the government says Defendants "den[ied] Fort Schuyler the opportunity to secure, through a competitive request-for-proposals process, better or economically more favorable services from another

vendor." (U.S.Br.37).  But it makes no serious effort to address Defendants'

refutation of this argument.  (Defs.Br.29-32).  The harm the government posits is

entirely hypothetical and unsupported by any evidence.  Even if Fort Schuyler was

more likely to approach LPCiminelli or COR to negotiate terms for specific

projects once they were named preferred developers, there was no proof that Fort

Schuyler could have gotten a better deal elsewhere, or that Fort Schuyler paid

Defendants more because they were preferred developers, or that Defendants' aim

was to overcharge or underperform on the projects they were hired to complete.

The government tries to fill the gap by pointing to "trial testimony" about

fees charged by "defendants' rivals." (U.S.Br.38).  However, those witnesses

could not, and did not, testify that the fees charged by their development

companies would have been lower for any of the projects at issue; they could not

say what they would have charged for the design-build projects at issue, and their

testimony was not offered or admitted for that purpose.  (*E.g.*, A1291/1485-87).

As a result, the government conceded it could not show "there was a developer out

there that was willing to do th[e] [projects] for [less]." (A1292/1491; *accord*

A1472-73/2517-18, A2625/7-8).[9]  Nor was there any evidence that any developer

would have offered better quality or would have been superior to Defendants in

---

[9] The government presented no evidence that any other developer was interested in
the Syracuse RFP or would have submitted a response but for the "tailoring"—
much less any evidence that fees for the Syracuse projects could have been lower.

any other respect.  In other words, there was a complete dearth of proof that

Defendants deprived Fort Schuyler of the benefit of its bargain, otherwise caused

any tangible harm, or contemplated doing so.

The government argues that the jury must have found otherwise, pointing to

instructions about "economic risks" and "expos[ure] to tangible economic harm."

(U.S.Br.36-37).  But the government concedes the instructions were erroneous

under *Ciminelli*, and in any event, the whole purpose of sufficiency review is to

toss out guilty verdicts that juries should not have rendered.  The evidence did not

prove wire fraud.  Accordingly, Defendants are entitled to acquittal.

\*        \*        \*

Even if this Court were to remand, however, it could not order a retrial.  The

government seeks retrial on Counts 1, 2, and 4 of the *existing* indictment.

(U.S.Br.7).  But as the government concedes (U.S.Br.9), that indictment "rest[s]

solely on [the invalid right-to-control] theory."  *Ciminelli*, 598 U.S. at 310.  The

government cannot retry Defendants without obtaining a new indictment charging

a "property theory other than the right-to-control theory" (U.S.Br.11), and alleging

new facts to support it.  This Court cannot determine now whether a hypothetical

future indictment would relate back to the existing indictment for statute-of-

limitations purposes.  *See* 18 U.S.C. §§ 3282(a), 3288; *United States v. Salmonese*,

352 F.3d 608, 622 (2d Cir. 2003); *United States v. Ben Zvi*, 168 F.3d 49, 54-55 (2d

40

Cir. 1999). Nor should the Court prejudge other potential bars to retrial. If the Court remands, it should simply remand for further proceedings. *See Bruno*, 661 F.3d at 740-45 & nn.1, 3 (finding the trial evidence sufficient and leaving all "other potential bars to reprosecution" to be "resolved as they arise if the government decides to file a superceding indictment").

## IV.   GERARDI'S § 1001 CONVICTION SHOULD BE REVERSED

The § 1001 charge was an afterthought in a four-week trial. The government devoted less than a half-day to the topic. Now that its fraud theory has failed, it is clear Gerardi's proffer statements could not have been material. The government's arguments to the contrary would rewrite and eliminate the materiality element. And the government does not seriously contest that reversal of the fraud convictions requires at least a new § 1001 trial due to spillover prejudice, as the district court indicated. (A2652). The extensive evidence on the fraud charges—weeks of evidence about supposed lies, dishonesty, and cheating— plainly would have been inadmissible in a trial exclusive to the § 1001 count.

### A.   The Government's Materiality Argument Fails

The government does not dispute that it couldn't prosecute Gerardi for wire fraud if his conduct didn't violate the statute. (Defs.Br.36-37). Nor does the government acknowledge the cases holding that a false statement is not material under § 1001 if the government lacks authority to bring charges related to the

statement's subject matter.  (Defs.Br.36).  Instead, the government advocates a definition of "materiality" that effectively erases this element from the statute.

*First*, the government contends Gerardi's statements were material because he "sought to influence the Government's investigation to avoid being charged with a crime."  (U.S.Br.44-45).  But that is true of most lies during investigative interviews.  It is not enough to prove a violation, because materiality and scienter are distinct elements the government must separately prove.  *United States v. Ballistrea*, 101 F.3d 827, 834-35 (2d Cir. 1996); *see* 18 U.S.C. § 1001(a)(2) ("whoever … *knowingly and willfully* … makes any *materially* false, fictitious, or fraudulent statement …") (emphasis added).  Furthermore, the materiality test is objective.  It asks whether the statement had "a natural tendency to influence, or [was] capable of influencing, the decision of the decisionmaking body."  *United States v. Gaudin*, 515 U.S. 506, 509 (1995); *see United States v. Litvak*, 808 F.3d 160, 172 (2d Cir. 2015) (must be "reasonably capable of influencing a decision").  It does not turn on the speaker's subjective state of mind.

*Second*, the government pays lip service to the *Gaudin* standard in its recitation of "Applicable Law" (U.S.Br.43), but never applies it to the facts.  The government fails to identify any governmental "decision" that could be influenced, let alone articulate what influence statements about non-criminal conduct could have had on that decision.  Instead, the government assumes *any* false statement to

42

government investigators is material. But this Court has never endorsed such a boundless view of materiality, and the cases the government cites (U.S.Br.45-46) don't support it. Two cases involved defendants who falsely denied committing an actual crime, so their statements clearly could influence the government's decision whether to prosecute. *See Brogan v. United States*, 522 U.S. 398, 399 (1998); *Jabar*, 19 F.4th at 84. Two others involved false accusations about other people— statements that reasonably could, and in fact did, prompt the government to investigate those individuals. *See United States v. Shanks*, 608 F.2d 73, 74 (2d Cir. 1979) (per curiam); *United States v. Adler*, 380 F.2d 917, 919-20 (2d Cir. 1967).

The government insists materiality does not turn on "chargeability," and that a false statement doesn't have to influence any official. (U.S.Br.46-47). Both propositions are true, but since neither circumstance was proven here, the government was required to present some other "evidence of an actual decision … that was reasonably capable of being influenced by [Gerardi]'s misstatements." *Litvak*, 808 F.3d at 172. The decision "cannot be purely theoretical" and the capability to influence "must exceed mere metaphysical possibility." *Id.* at 172-73.

The government's own cases (U.S.Br.47) demonstrate the kind of showing that is required, but was missing here. In *United States v. Mercedes*, 401 F. App'x 619 (2d Cir. 2010) (summary order), the defendant falsely told ICE officials he was Cuban. This Court held the statement material to ICE's decision whether to

43

deport the defendant because of an ICE policy against deporting Cuban aliens. *Id.* at 620. In *United States v. Adekanbi*, 675 F.3d 178 (2d Cir. 2012), prosecutors asked the defendant to reveal his true identity in a proffer for safety-valve relief under 18 U.S.C. § 3553(f), but the defendant continued to lie. This Court held that materiality was proven through testimony that a defendant's truthfulness and criminal history are relevant to safety-valve determinations. *Id.* at 183.

Here, by contrast, there was no evidence of any "actual decision of the [government investigators] that was reasonably capable of being influenced by [Gerardi]'s misstatements," *Litvak*, 808 F.3d at 172, if, under *Ciminelli*, the conduct those statements concerned was not fraud.

### B. The Government Does Not Meaningfully Dispute Prejudicial Spillover From The Wire Fraud And Conspiracy Counts

The government concedes all the other convictions must be vacated under *Ciminelli*. Accordingly, Gerardi's § 1001 conviction must be vacated unless it "did not result from a spillover from" the other counts. *United States v. Rooney*, 37 F.3d 847, 857 (2d Cir. 1994); *see United States v. Bruno*, 383 F.3d 65, 91 (2d Cir. 2004). As explained, there is no denying such prejudice here under the applicable test. (Defs.Br.38-43). The government refuses to meaningfully engage with the issues. Instead, it simply cites its earlier brief, without bothering to address any of Gerardi's responses to that brief. (U.S.Br.48 (citing Dkt. 238, at 187-93)). Its arguments border on frivolous.

44

1.  The government contends the wire fraud and conspiracy evidence was not unduly "inflammatory" because it provided context for Gerardi's proffer session.  (Dkt. 238, at 189-90).  But the government does not—and cannot—dispute that the fraud evidence overwhelmed the § 1001 evidence, which consumed only a half-morning sliver of a four-week trial.  (Defs.Br.38).  Nor does the government dispute that it focused on the fraud charges in its jury arguments, and urged the jury to convict on § 1001 because of Defendants' alleged "lies" and "cheats" regarding the RFPs.  (Defs.Br.38-39).  If an isolated line in the government's summation mandates reversal for prejudicial spillover, *Rooney*, 37 F.3d at 856-57, surely the avalanche of smears and disparagements here suffices.

2.  The government's claim that *all* the RFP evidence—not just about the Syracuse RFP, but also Buffalo—would have been admitted in a trial limited to Gerardi's charged false statement (Dkt. 238, at 191-92) is absurd.  The wealth of evidence about the Buffalo RFP, including the alleged email deletions and other alleged misconduct in which Gerardi was uninvolved and unaware, plainly would have been inadmissible at such a trial.  (Defs.Br.41 n.9; Dkt. 267, at 34-35).

3.  The government briefly notes the strongest points in its § 1001 case (Dkt. 238, at 192-93), but fails to acknowledge the weaknesses.  (*See* Dkt. 209, at 58-60; Dkt. 267, at 32-33; Defs.Br.41-43).  Specifically, the indictment and jury instructions charged a single false statement—that Gerardi "den[ied] involvement

45

in tailoring the Syracuse RFP for the benefit of [COR]" (A312, A1557/2894)—but the government presented *no* evidence that Gerardi made that statement. The FBI agent who testified about Gerardi's proffer session never used those or any similar words. Indeed, the government cites no trial record support for its claim that "Gerardi stated that he had not tried to benefit COR Development by tailoring the Syracuse RFP." (U.S.Br.44).

The agent did testify that Gerardi made statements about his comments on the draft Syracuse RFP, but none of these were charged as false statements. There also was no evidence that any were false. According to the agent, for example, Gerardi said his comments were intended to ensure that the RFP was open to other bidders. (A1329/1696; *see* A1328/1694-95). But why else would he have suggested lowering the RFP's experience requirements or eliminating requirements other bidders could not satisfy? Whether his RFP comments were motivated by magnanimity (U.S.Br.44) or a desire to make the RFP appear less "tailored," Gerardi's proffer session statements were indisputably true. (Defs.Br.42).

## CONCLUSION

For the foregoing reasons and those in Defendants' initial post-remand brief, Defendants are entitled to acquittal on Counts 1, 2, and 4; Gerardi is entitled to acquittal or at least a new trial on Count 16; and the Court should reverse and remand Aiello's conviction on Count 10 so the government can dismiss that count.

46

Dated:   December 5, 2023

/s/ Alexandra A.E. Shapiro

Alexandra A.E. Shapiro
Daniel J. O'Neill
Fabien M. Thayamballi
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 257-4880

*Attorneys for Defendants-Appellants*
*Steven Aiello and Joseph Gerardi*


/s/ Spencer L. Durland

Timothy W. Hoover            Herbert L. Greenman
Spencer L. Durland           LIPSITZ GREEN SCIME CAMBRIA LLP
HOOVER & DURLAND LLP         42 Delaware Avenue, Suite 300
561 Franklin Street          Buffalo, New York 14202
Buffalo, New York 14202      (716) 849-1333
(716) 800-2600

*Attorneys for Defendant-Appellant Louis Ciminelli*


/s/ Michael C. Miller

Michael C. Miller            Bruce C. Bishop
Reid H. Weingarten           STEPTOE & JOHNSON LLP
Michael G. Scavelli          1330 Connecticut Avenue N.W.
STEPTOE & JOHNSON LLP        Washington, D.C. 20036
1114 Avenue of the Americas  (202) 429-6747
New York, New York 10036
(212) 506-3900

*Attorneys for Defendant-Appellant Alain Kaloyeros*

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION,
TYPEFACE REQUIREMENT, AND
<u>TYPE STYLE REQUIREMENT</u>**

1.  The undersigned counsel of record for Defendants-Appellants Steven Aiello and Joseph Gerardi certifies that the foregoing brief contains 46 pages and thus complies with the page limit set forth in this Court's Order dated July 10, 2023 (Dkt. 517).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point font of Times New Roman.

Dated:    December 5, 2023

<u>/s/ Alexandra A.E. Shapiro</u>
Alexandra A.E. Shapiro